UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. _____ – Civ

ALBERT MORGAN,
**PLAINTIFF,**

VS.

NEW HOTEL OPERATION FLORIDA, LLC,
d/b/a ROYAL BLUES HOTEL
**DEFENDANT.**

## COMPLAINT

Plaintiff, Albert Morgan, through counsel sues Defendant, New Hotel Operation Florida, LLC d/b/a Royal Blues Hotel and states as follows:

## Jurisdiction

1. The jurisdiction of the Court over matters in this Complaint is founded upon 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

2. Morgan is a US Citizen and resides in Broward County, Florida.

3. New Hotel Operation FL, LLC is a Florida Limited Liability Company doing business as the Royal Blue Hotel located in Deerfield Beach, Broward County, Florida.

## VENUE

4. The facts related in this Complaint occurred in Broward County, Florida, in the Southern District of Florida; therefore, venue is appropriate in this Court.

## ADMINISTRATIVE EXHAUSTION

5. On or about July 30, 2019, Morgan filed a EEOC Charge docketed as 510-2019-05497 alleging discrimination based on Race (Title VII) Color (Title VII), National Origin (Title VII), Retaliation (Title _____) and, Age (ADEA). Exhibit A.

6. Morgan cross-filed that charge with the Florida Commission on Human Relations.

7. On or about February 12, 2020, the EEOC issued a Right to Sue letter. Exhibit B.

## Factual Background

8. Morgan is a 42-year-old Hispanic Male.
9. He had over 15 years' experience as a sous chef and was hired as a line cook in November 2017 by the Royal Blues Hotel Relais & Chateaux ("Royal Blues") located in Deerfield Beach, Florida.
10. Morgan is from Nicaragua and is Hispanic with brown skin.
11. At all times material to this complaint, Diego Ribiero was the General Manager and Jamie Bowling was the Assistant General Manager and Morgan's direct supervisor.
12. Diego Ribiero is Brazilian male and Jamie Bowling is a Caucasian female.
13. The executive chef during a portion of Morgan's employment was a white male named Mathew Mohler.
14. While Morgan was working at Royal Blues, he witnessed Mohler make inappropriate comments to various female staff members.
15. Further, Mohler sexually harassed several female employees. For instance, Morgan witnessed the head chef unbutton the shirt of one of the female employees.
16. After witnessing this behavior, Morgan informed Carlos, the head of housekeeping of what Morgan witnessed. Carlos then relayed that information to Mr. Ribiero.
17. After the incident was reported, Mr. Ribiero told Morgan that "if [Ribiero] doesn't see it, then it doesn't happen."
18. This remark was made in such a way as to imply that Morgan should keep quiet.
19. Soon after Mr. Ribiero made this comment, the executive chef began cutting Morgan's hours and accused Morgan of stealing a set of keys and lying about Morgan possessing a set of keys to the food storage area. However, Morgan had been provided keys upon employment as he was often the first cook to show up for work.
20. The executive chef was eventually terminated after the owner of Royal Blues was informed of the executive chef's behavior by several female employees.
21. Morgan was then singled out and admonished for walking through the dining room by Bowling. He was told that he was to not walk through the dining room but was to stay in the kitchen.

22. At the time that Bowling admonished him, Morgan had just walked through the dining room behind another cook named Brian who was a white male.
23. Brian was not told that he could not walk through the dining room even though Bowling saw both Brian and Morgan walking through the dining room.
24. Morgan questioned Bowling as to why he was being singled out and she became angry with him and did not respond.
25. Shortly after this incident, a sign was posted warning kitchen staff to not walk through the dining room during business hours but this was not enforced against white employees.
26. White kitchen staff employees frequently walked through the dining room during business hours without any repercussion.
27. About three months prior to his termination, the sous chef at Royal Blues quit.
28. Morgan spoke to Mr. Ribiero about the job since Morgan had 15 years of prior experience as a sous chef.
29. Mr. Ribiero ignored Morgan's request and hired a young, white, female who was still in culinary school to be the new sous chef.
30. Morgan asked Mr. Ribiero why he did not get the job and Mr. Ribiero said that he didn't know Morgan was qualified but Mr. Ribiero never made any inquiries of Morgan when Morgan was requested to be promoted to sous chef.
31. However, even though Mr. Ribiero claims that he did not know of Morgan's qualifications, Morgan was assigned to train the new sous chef.
32. The new sous chef was so inexperienced that she did not know how to make an omelet.
33. Morgan was terminated in October 2018 and was replaced by a white male chef.
34. Based on information and belief, Morgan was discriminated against because of his age, national origin, and skin color in violation of Federal and State fair employment practice statutes including, but not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Florida Civil Human Rights Act.
35. Based on information and belief, Morgan was retaliated against for engaging in protected conduct in violation of federal and state fair employment practice statutes including, but not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Florida Civil Human Rights Act.

36. Plaintiff has exhausted his administrative remedies by filing this lawsuit within 90 days of his receipt of the Right to Sue letter.

## COUNT I
## Age Discrimination in Employment Act
## (ADEA)

37. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.

38. Morgan is a member of the protected age class as he is over the age of 40.

39. Defendant is an employer for purposes of the ADEA.

40. Morgan was qualified for the position of sous chef.

41. Morgan suffered adverse employment actions including, wrongfully accused of theft, not being promoted to the position of sous chef and being terminated, without cause.

42. These adverse actions occurred under circumstances giving rise to an inference of age discrimination.

43. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

44. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to his reputation, and emotional distress.

45. Morgan seeks all remedies and damages permitted under the ADEA including, but not limited to, backpay, front pay, liquidated damages, attorney's fees, costs, and interest.

## COUNT II
## Title VII Discrimination on the Basis of National Origin

46. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.
47. Morgan, a male from the Nicaguara is a member of a protected class.
48. Defendant is an employer for purposes of Title VII.
49. Morgan was qualified for his position as chef.

50. Morgan suffered adverse employment actions including wrongfully accused of theft, failure to be promoted to sous chef and terminated.

51. These adverse actions occurred under circumstances giving rise to an inference of National Origin discrimination.

52. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

53. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to his reputation, and emotional distress.

54. Morgan seeks all remedies and damages permitted under Title VII including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## COUNT III
## Florida Civil Rights Act Age Discrimination

55. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.

56. Morgan is a member of the protected age class.

57. Defendan tis an employer for purposes of the Florida Civil Rights Act.

58. Morgan was qualified for his position.

59. Morgan suffered adverse employment actions including wrongfully accused of theft, failure to be promoted to sous chef and terminated.

60. These adverse actions occurred under circumstances giving rise to an inference of age discrimination.

61. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

62. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

63. Morgan seeks all remedies and damages permitted under the Florida Civil Rights Act

including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

### COUNT IV
### Florida Civil Rights Act
### Discrimination on the Basis of COLOR

64. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.

65. Morgan, a male with brown toned ski is a member of the protected class.

66. Defendant is an employer for purposes of the Florida Civil Rights Act.

67. Morgan was qualified for his position.

68. Morgan suffered adverse employment actions including wrongfully accused of theft, failure to be promoted to sous chef and terminated.

69. These adverse actions occurred under circumstances giving rise to an inference of ethnicity discrimination.

70. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

71. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

72. Morgan seeks all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

### COUNT V
### Florida Civil Rights Act
### Discrimination on the Basis of National Origin

73. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.

74. Morgan from the Nicaguara s is a member of the protected class.

75. Defendant is an employer for purposes of the Florida Civil Rights Act.

76. Morgan was qualified for his position

77. Morgan suffered adverse employment actions including wrongfully accused of theft, failure to be promoted to sous chef and terminated.

78. These adverse actions occurred under circumstances giving rise to an inference of National Origin discrimination.

79. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

80. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

81. Morgan seeks all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## COUNT VI
### Title VII Discrimination on the Basis of COLOR

82. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.

83. Morgan, a male with brown toned ski is a member of the protected class.

84. Defendant is an employer for purposes of the Florida Civil Rights Act.

    Morgan was qualified for his position.

85. Morgan suffered adverse employment actions including wrongfully accused of theft, failure to be promoted to sous chef and terminated.

86. These adverse actions occurred under circumstances giving rise to an inference of ethnicity discrimination.

87. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

88. As a result of Defendants' discriminatory conduct, Morgan has suffered damages including, but not limited to, financial damages, harm to her reputation, and emotional distress.

89. Morgan seeks all remedies and damages permitted under the Title VII, including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## Count VII
## Retaliation

90. Paragraphs 1-36 are incorporated by reference as if set forth herein at length.
91. Morgan engaged in protective activity including but not limited to reporting the head chef's inappropriate comments and behavior towards female employees.
92. Shortly after this protected activity, Morgan was subjected to adverse actions including, but not limited to, being accused of stealing keys, receiving less desirable work, and not receiving a promotion.
93. Morgan suffered a materially adverse action in the form of being terminated of his employment.
94. A causal connection exists between the protected activity and the materially adverse actions including, but not limited to, a close temporal proximity and ongoing antagonism against Morgan.
95. There was no justification for these adverse actions and any justification provided was a pretext for retaliation.
96. As a result of Defendant's retaliatory conduct, Morgan has suffered damages, including, but not limited to, the loss of employment, financial damages, harm to his reputation and emotional distress.
97. Morgan seeks all remedied and damages permitted including but not limited to, backpay, frontpay, emotional distress and reputation harm damages, attorney's fees, costs and interest.

**DEMAND FOR JURY TRIAL**

98. Jury trial is demanded on all counts.

>**Grady Legal PA**
>On Behalf of the Plaintiff
>1645 SE 3rd Ct. #204
>Deerfield Beach, FL 33441
>754.333.0313
>/s/ Jacqueline A. Grady_____
>Jacqueline A. Grady
>FBN 635871
>jackie@gradylegal.com